**ANDUNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD**

DAVID YOUNG,
      Appellant,

    v.

DEPARTMENT OF VETERANS
    AFFAIRS,
      Agency.

DOCKET NUMBER
PH-0432-17-0342-I-2

DATE: May 15, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

Gavriel Toso, Esquire, and Stephen Goldenzweig, Esquire, Houston, Texas,
    for the appellant.

Paul P. Kranick, Esquire, Coatesville, Pennsylvania, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

**REMAND ORDER**

The appellant has filed a petition for review of the initial decision, which affirmed the agency's action removing him for unacceptable performance pursuant to 5 U.S.C. chapter 43. For the reasons set forth below, we GRANT the petition for review. We MODIFY the initial decision to clarify the legal standard

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

applicable to the appellant's claim of retaliation for prior protected equal employment opportunity (EEO) activity and REMAND the matter to the Northeastern Regional Office for further adjudication consistent with the U.S. Court of Appeals for the Federal Circuit's decision in *Santos v. National Aeronautics and Space Administration*, 990 F.3d 1355 (Fed. Cir. 2021).

## BACKGROUND

The agency removed the appellant from his position as a Veterans Service Representative (Rating) for unacceptable performance pursuant to 5 U.S.C. chapter 43. *Young v. Department of Veterans Affairs*, MSPB Docket No. PH-0432-17-0342-I-1, Initial Appeal File (IAF), Tab 1 at 10-16. Specifically, the agency charged that the appellant's performance in the "output" element of his performance plan remained unacceptable following a 90-day Performance Improvement Plan (PIP) and a 14-day extension. *Id*. at 11-16.

The appellant appealed the action to the Board. IAF, Tab 1. The appeal was dismissed without prejudice and refiled. IAF, Tab 18; *Young v. Department of Veterans Affairs*, MSPB Docket No. PH-0432-17-0342-I-2, Appeal File (I-2 AF), Tab 1. A hearing was held. Hearing Transcript (HT). The administrative judge issued an initial decision finding that the agency proved the merits of its performance-based removal action by substantial evidence. I-2 AF, Tab 33, Initial Decision (ID) at 3-8. Specifically, he found that the agency proved that the appellant had produced only 1.43 weighted actions per 8 hours, less than the requisite 3 weighted actions per 8 hours necessary to be considered fully successful in the "output" critical element. ID at 6-8. He further found that the appellant failed to prove his affirmative defenses of harmful procedural error, disability discrimination (disparate treatment and failure to accommodate), and retaliation for prior protected EEO activity. ID at 8-18. Accordingly, he affirmed the removal. ID at 18.

The appellant has filed a petition for review, the agency has responded in opposition, and the appellant has filed a reply. Petition for Review (PFR) File,

Tabs 3, 5-6. In his petition, the appellant argues the following: (1) he was not given a meaningful opportunity to improve; (2) the administrative judge should have found that the deciding official was not credible and was motivated to remove him in retaliation for his EEO activity; (3) the agency discriminated against him by failing to provide him with a reasonable accommodation; and (4) the agency committed harmful procedural error by violating provisions of the applicable collective bargaining agreement (CBA). PFR File, Tab 3 at 9-21.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The agency proved that the appellant's performance was unacceptable under the legal standard for chapter 43 actions at the time the initial decision was issued.</u>

At the time the initial decision was issued, to prevail in an appeal of a performance-based removal under chapter 43, the agency was required to prove by substantial evidence[2] that: (1) the Office of Personnel Management approved its performance appraisal system and any significant changes thereto; (2) the agency communicated to the appellant the performance standards and critical elements of his position; (3) the appellant's performance standards are valid under 5 U.S.C. § 4302(b)(1); (4) the agency warned the appellant of the inadequacies of his performance during the appraisal period and gave him a reasonable opportunity to demonstrate acceptable performance; and (5) the appellant's performance remained unacceptable in at least one critical element. *Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 5 (2010).

On review, the appellant does not challenge the administrative judge's findings that the agency met its burden of proving elements (1)-(3) and (5), PFR File, Tabs 3, 6, and we find no reason to disturb these findings. However, the appellant challenges the administrative judge's findings pertaining to element (4) by contending that the agency failed to provide him with a

---

[2] Substantial evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree. 5 C.F.R. § 1201.4(p). This is a lower standard of proof than preponderance of the evidence. *Id.*

meaningful opportunity to improve in the critical element of "output."[3] PFR File, Tab 3 at 8-20. To this end, he avers that he was unavailable to work for a large portion (60%) of his PIP due to preapproved vacation/leave, surgery and recovery, and significant computer/technical issues. *Id.* He further contends that he only worked 20% of the extension period, the agency did not advise him of what he needed to do to improve until 2 weeks after the start of the PIP, and the agency official assigned to assist him was ineffective. *Id.*

The right to a reasonable opportunity to improve is a substantive right and a necessary prerequisite to all chapter 43 actions. *Lee*, 115 M.S.P.R. 533, ¶ 32. In determining whether the agency afforded the appellant a reasonable opportunity to demonstrate acceptable performance, relevant factors to consider include the nature of the duties and responsibilities of the employee's position, the performance deficiencies involved, and the amount of time which is sufficient to enable the employee with an opportunity to demonstrate acceptable performance. *Id.* The administrative judge identified and discussed these factors in the initial decision. ID at 5-8. We discern no error with his analysis or conclusion that the agency provided the appellant with a reasonable opportunity to improve.

Regarding the amount of time that he was given to demonstrate acceptable performance, on review, the appellant relies primarily on *Even v. Department of the Interior*, 25 M.S.P.R. 190 (1984), to suggest that the administrative judge erred by failing to take his unavailability during the PIP and extension period into consideration. PFR File, Tab 3 at 15, 17. However, the appellant's reliance on *Even* is misplaced. In *Even*, the Board agreed with the presiding official's finding that the agency failed to provide the appellant with an opportunity to improve when it granted her sick leave and then held her accountable for work not completed during the period of her excused absence. *Even*, 25 M.S.P.R. at 191.

---

[3] The record reflects that, during the relevant timeframe, the appellant was rated exceptional in the elements of quality, timeliness, training, and organization support. IAF, Tab 4 at 58-62.

By contrast, both the agency and the administrative judge took the appellant's unavailability during the PIP and extension period into consideration in this matter. ID at 6-7. In calculating the appellant's weighted output, the agency did not include "deductible time," that is, time the appellant was unavailable due to leave, training, technical, or other issues (316.75 hours of 568 total hours). PFR File, Tab 3 at 16; HT at 22-23, 45, 64-69 (testimony of the appellant's supervisor). To this end, the administrative judge concluded that the appellant failed to increase his output to an acceptable level "even for the 251.25 hours [out of 568 hours] that he was available." ID at 6-7. Moreover, the Board has found that a 30-day PIP may be sufficient to provide an appellant with a reasonable opportunity to improve under 5 U.S.C. chapter 43. *Melnick v. Department of Housing and Urban Development*, 42 M.S.P.R. 93, 101 (1989), *aff'd*, 899 F.2d 1228 (Fed. Cir. 1990) (Table). Even if the appellant only worked 40% of the 90-day PIP and 20% of the extension period, he had more than a 30-day timeframe to demonstrate acceptable performance.

The appellant also contends on review that he did not receive advance notice of his PIP due to his preapproved 2-week vacation that coincided with the start of the PIP, and he did not receive any notice of the specific things he needed to do in order to be successful during the PIP until he returned from leave "on or about October 13, 2016." PFR File, Tab 3 at 9, Tab 6 at 5. These assertions are not supported by the record, which shows that the appellant knew as early as September 13, 2016—almost 2 weeks before his vacation—that he would be placed on a PIP, he had a conference call with his supervisor on September 20, 2016, and he received and refused to sign the PIP notice and memorandum on or around September 21, 2016. IAF, Tab 4 at 48-52, 56, Tab 7 at 48-50.

The appellant further alleges that his supervisor/coach during the PIP was ineffective because he had never worked in the appellant's position, he was unfamiliar with his job functions, he failed to conduct face-to-face meetings, and

he frequently canceled scheduled bi-weekly meetings due to the appellant's medical appointments, all of which deprived him of a meaningful opportunity to improve. PFR File, Tab 3 at 8, 10. We find these arguments unavailing.

The regulation at 5 C.F.R. § 432.104 requires the agency to "offer assistance" to the employee in improving unacceptable performance, but there is no mechanical requirement regarding the form of assistance. *Gjersvold v. Department of the Treasury*, 68 M.S.P.R. 331, 336 (1995); *see Towne v. Department of the Air Force*, 120 M.S.P.R. 239, ¶ 20 (2013) (finding that an agency may meet its obligation to offer assistance by means other than meeting personally during the PIP). The record reflects that the appellant's supervisor scheduled remote bi-weekly meetings with the appellant via conference call, provided feedback to him throughout the course of the PIP and extension period, and assigned him a mentor. IAF, Tab 4 at 26, 28, 30, 32, 34, 36, 39, 45-46. The appellant also asserts that his supervisor failed to provide him with training during the PIP, PFR File, Tab 3 at 10; however, there is no law, rule, or regulation that requires an agency to afford an employee such training, *Macijauskas v. Department of the Army*, 34 M.S.P.R. 564, 569 n.2 (1987), *aff'd*, 847 F.2d 841 (Fed. Cir. 1988) (Table).

Accordingly, we discern no basis to disturb the administrative judge's finding that the agency established by substantial evidence that it provided the appellant with a reasonable opportunity to demonstrate acceptable performance, ID at 5-8, and we affirm his decision that the agency proved by substantial evidence that the appellant's performance was unacceptable under the legal standard for chapter 43 actions at the time the initial decision was issued.

<u>We modify the initial decision to clarify the legal standard applicable to the appellant's claim of retaliation for EEO activity; however, a different outcome is not warranted.</u>

On review, the appellant reasserts that the agency's removal action was in retaliation for his protected EEO activity. IAF, Tab 1 at 6; PFR File, Tab 3 at 21.

However, the nature of the appellant's claim of EEO retaliation is unclear. To this end, the administrative judge stated in the initial decision only that "[i]t is undisputed that the appellant had previously filed an EEO complaint against the agency in 2015." ID at 17. The appellant's petition for review suggests that his EEO complaint related to disability discrimination. PFR File, Tab 3 at 6-7. Because the nature of the appellant's EEO retaliation claim may warrant a different legal analysis, we modify the initial decision to discuss and clarify these different legal standards.

In analyzing the appellant's EEO retaliation claim, the administrative judge relied on, among other cases, *Savage v. Department of the Army*, 122 M.S.P.R. 612 (2015), and found that the appellant failed to show that retaliation was a motivating factor in the agency's removal action. ID at 15-18. Subsequent to the issuance of the initial decision, the Board found that retaliation claims under Title VII and the Rehabilitation Act are subject to different legal standards. Specifically, the Board found that claims of retaliation for opposing discrimination in violation of Title VII are analyzed under the same framework used for Title VII discrimination claims, which requires proof that a prohibited consideration was a motivating factor in the agency's decision. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 20-22, 30. However, an appellant alleging retaliation for activity protected under the Rehabilitation Act must prove that such retaliation was a "but-for" cause of the agency's action. *Id.*, ¶¶ 44-46.

As indicated, the administrative judge concluded that the appellant failed to show that retaliation was a motivating factor in the agency's removal action. ID at 17. To this end, he specifically found that the appellant had made only "bare allegations" regarding "reprisal discrimination" and that nothing from the record evidence or the relevant agency officials' testimony provided "even a hint" that any agency personnel had a discriminatory animus toward him. ID at 17-18. The Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of

the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002).

On review, the appellant contends that the deciding official provided contradictory testimony as to her knowledge of his EEO activity, and, therefore, she should not have been considered credible by the administrative judge. PFR File, Tab 3 at 21. Specifically, he alleges that the deciding official "made a big deal of the fact that she in no way, shape, or form knew about [his] EEO cases," when she actually had been aware of his cases at the time of the removal. *Id.* The record reflects that the deciding official initially testified that she did not recall "knowing or not knowing whether" the appellant had filed an EEO complaint at the time she removed him; however, once her recollection was refreshed with her notes from the appellant's oral reply, she acknowledged that he had raised this issue during the reply, and she further testified that his EEO activity was not "relevant" to the performance issues. HT at 139, 154-55, 278-79 (testimony of the deciding official); IAF, Tab 4 at 89-94. Any discrepancy in the deciding official's testimony, described above, does not constitute a sufficiently sound reason to overturn the administrative judge's credibility determinations. *See Haebe*, 288 F.3d at 1301.

Accordingly, we discern no basis to disturb the administrative judge's conclusion that the appellant failed to show that his EEO activity was a motivating factor in the removal action. ID at 17-18. Because the appellant failed to show that his protected activity was a motivating factor, he necessarily failed to meet the more stringent "but-for" standard. *See Desjardin v. U.S. Postal Service*, 2023 MSPB 6, ¶ 33. Thus, regardless of whether the appellant's EEO activity fell under the purview of Title VII or the Rehabilitation Act, a different outcome is not warranted.[4]

---

[4] In analyzing the appellant's disparate treatment disability discrimination affirmative defense, the administrative judge found the appellant did not prove that "any disability he may have had was a motivating factor in his removal." ID at 15. We therefore need

<u>The appellant's arguments regarding his failure to accommodate claim are unavailing.</u>

An agency is required to make reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual with a disability unless the agency can show that the accommodation would cause an undue hardship on its business operations. *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 13 (2014); 29 C.F.R. § 1630.9(a). An appellant may establish a disability discrimination claim based on failure to accommodate by showing by preponderant evidence that: (1) he is an individual with a disability as defined by 29 C.F.R. § 1630.2(g);[5] (2) he is a qualified individual with a disability, as defined by 29 C.F.R. § 1630.2(m); and (3) the agency failed to provide him a reasonable accommodation. *Miller*, 121 M.S.P.R. 189, ¶ 13; 5 C.F.R. § 1201.56(b)(2)(i)(C).

In the initial decision, the administrative judge acknowledged that the appellant suffers from several medical conditions. ID at 13. The administrative judge found, however, that the appellant failed to establish that he is an individual with a disability. ID at 13-14. In so concluding, he reasoned that the appellant failed to show that he has a physical or mental impairment that substantially limits one or more major life activities, including working.[6] ID at 13-14 & n.2; 29 C.F.R. § 1630.2(j)(1)(ii).

---

not decide whether discrimination was a "but-for" cause of the agency's action. *See Pridgen*, 2022 MSPB 31, ¶ 40.

[5] The appellant may prove that he has a disability by showing that he: (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g)(1).

[6] In the initial decision, the administrative judge focused solely on whether the appellant was substantially limited in the major life activity of working because the appellant "proffered no evidence to show how his impairment limited any other major life activities." ID at 13 n.2. The appellant testified at the hearing that his conditions affected his sleep; however, he does not contend on review that the administrative judge erred by failing to consider this alternative life activity. HT at 196, 209, 213 (testimony of the appellant); 29 C.F.R. § 1630.2(i)(1)(i).

On review, the appellant challenges the administrative judge's analysis by arguing the following: (1) he has "physical and mental service-connected disabilities"; (2) agency officials should have known that telework was not a sufficiently effective accommodation; and (3) agency officials should have construed his requests for additional medical leave during the PIP as reasonable accommodation requests. PFR File, Tab 3 at 5-6, 20-21. He also asserts that the agency failed to explore reassignment as an accommodation. *Id.* at 20-21.

The agency does not dispute that the appellant is a service-connected veteran or that he suffers from several medical conditions. I-2 AF, Tab 15 at 4; HT at 9-10 (testimony of the appellant's supervisor), 196, 261 (testimony of the appellant). The record also reflects that the agency granted the appellant's request to telework full-time starting in September 2015 as a reasonable accommodation.[7] I-2 AF, Tab 26 at 91-92.

We interpret the appellant's argument on review regarding his documented service-connected conditions to be an argument that the administrative judge should have analyzed whether he has a record of an impairment.[8] An individual has a record of an impairment under 42 U.S.C. § 12102(1)(B) "if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). By contrast, the "[service-connected disability] percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations." 38 C.F.R. § 4.1; *see* 74 Fed. Reg. 48431, 48448 (2009) ("The fact that an individual has a record of being a disabled veteran . . . does not guarantee that the individual will satisfy the definition of 'disability'

---

[7] The agency also provided the appellant with "equipment or something of that nature." HT at 12 (testimony of the supervisor).

[8] The appellant does not appear to challenge the administrative judge's finding that he failed to prove that he is an individual with a physical or mental impairment that substantially limits the major life activity of working, and we affirm that finding herein.

under part 1630."). Thus, to the extent the appellant argues that he proved that he is an individual with a disability because he showed that he has a record of impairment, we find his argument unpersuasive.

Moreover, even if we find for the purposes of our analysis that the appellant has proven that he has a disability, he has failed to prove that he is a qualified individual with a disability pursuant to 29 C.F.R. § 1630.2(m). A qualified individual with a disability is a person who, with or without reasonable accommodation, can perform the essential functions of a position. 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m). The essential functions of a position generally refer to the fundamental job duties or the reason for a position's existence as reflected in, among other things, the amount of time spent on a particular task. *Henry v. Department of Veterans Affairs*, 100 M.S.P.R. 124, ¶ 10 (2005). Despite the accommodation of full-time telework, the appellant was still unable to perform the essential functions of his position, i.e., to perform to the fully acceptable level in the output critical element. The agency is not required to lower its production or performance standards as a reasonable accommodation. *Byrne v. Department of Labor*, 106 M.S.P.R. 43, ¶ 7 (2007).

We have considered the appellant's remaining arguments regarding his failure to accommodate claim, but find that none warrant a different outcome. For example, we have considered his assertion that the agency should have construed his "repeated requests for leave for medical issues" as a reasonable accommodation request. PFR File, Tab 3 at 20. However, the appellant does not identify on review any requests for medical leave that the agency denied. Moreover, the appellant fails to articulate on review any accommodation that would have enabled him to perform the essential functions of the Veteran Service Representative (Rating) position, i.e., to bring his output to acceptable levels. We have also considered his argument that the agency had an obligation to explore reassignment as "the accommodation of last resort." *Id.* However, he

does not cite any documentation on review to support such a request, nor does he identify any position to which he could have been reassigned.[9]

The appellant did not prove harmful procedural error.

On review, the appellant suggests that the agency violated its CBA, which mandated both that the agency afford the appellant "at least 90 calendar days" to resolve the performance deficiencies and that the supervisor meet with the appellant on a bi-weekly basis during this timeframe. PFR File, Tab 3 at 10, 17; IAF, Tab 4 at 82. Allegations of agency error in applying CBA provisions in chapter 43 actions are treated as claims of procedural error. *Slavich v. Social Security Administration*, 102 M.S.P.R. 171, ¶ 8 (2006); *DeSousa v. Agency for International Development*, 38 M.S.P.R. 522, 526 (1988).

Pursuant to 5 U.S.C. § 7701(c)(2)(A), the Board will not sustain an agency's decision if the appellant "shows harmful error in the application of the agency's procedures in arriving at such decision." A procedural error is harmful where the record shows that an error by the agency was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *Pumphrey v. Department of Defense*, 122 M.S.P.R. 186, ¶ 10 (2015); 5 C.F.R. § 1201.4(r). An appellant bears the burden of proving, by preponderant evidence,[10] that the agency committed harmful error in reaching its decision. *Pumphrey*, 122 M.S.P.R. 186, ¶ 10; 5 C.F.R. § 1201.56(b)(2)(i)(C).

---

[9] Moreover, the proposing official testified that he considered proposing reassignment or a demotion to a lower-graded position, but he believed that removal was the best option under the circumstances. HT at 122-23 (testimony of the proposing official). The deciding official acknowledged that demotion to a previously held position is not always available because the duties of the appellant's previously held position were "different" than the tasks in his Veteran Service Representative (Rating) position, and there were different expectations at different grade levels. HT at 157-58 (testimony of the deciding official).

[10] Preponderant evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

We agree with the administrative judge that the appellant failed to prove that the agency committed harmful procedural error. ID at 8-9. There is no provision in the CBA that required the agency to extend the length of the PIP each time the appellant used leave or had significant computer/technical issues. Nevertheless, the agency extended the appellant's PIP to a total of approximately 104 days on account of his unavailability during the initial 90-day PIP period. IAF, Tab 1 at 10, 12. Because 104 days is "at least 90 calendar days," we discern no agency error.

The CBA also required that "the supervisor shall meet with the employee on a bi-weekly basis to provide regular feedback on progress made during the PIP period."[11] IAF, Tab 4 at 82. Here, the record indicates that the appellant's supervisor scheduled bi-weekly meetings with him and provided him with advanced notice of all such meeting dates. *Id.* at 45-46. The record substantiates the appellant's assertion that he was unable to attend some of these meetings due to medical appointments, IAF, Tab 4 at 26, 28, 30, but the supervisor still provided him with feedback, *id.* at 26, 28. We find that the appellant's unavailability does not render the agency in violation of this CBA provision. PFR File, Tab 3 at 10; IAF, Tab 4 at 26, 28, 30.

In any event, even if we determined that the appellant proved agency error, he fails to show that any alleged violation is likely to have caused the agency to reach a different conclusion. As noted, the appellant needed to improve his output only, ID at 7, and he proffers nothing to show that a longer PIP period or additional meetings with his supervisor would have significantly increased his output during the PIP and extension period, *see Wood v. Department of the Navy*, 27 M.S.P.R. 659, 663 (1985) (finding no harmful error where the agency's regulations required a 90-day PIP, but the agency only afforded the appellant a 30-day PIP, because she failed to show that additional time would have permitted

[11] The CBA subsequently references the "weekly meeting." IAF, Tab 4 at 82. Neither party raises this discrepancy in the CBA on review. We assume for the purposes of our analysis that the subsequent reference to a "weekly" meeting was a typographical error.

her to improve her performance and would have caused the agency not to take the removal action); *see also Green v. Department of Labor*, 26 M.S.P.R. 96, 98 n.3 (1985) (finding no harmful error where the agency failed to hold weekly meetings, as required by the CBA, because the appellant failed to show that he was harmed by the procedural error). Thus, a different outcome is not warranted.

Remand is required in light of *Santos*.

As indicated, in affirming the agency's performance-based removal action, the administrative judge correctly applied the Board's precedent setting forth the relevant legal standard for actions under chapter 43 at the time he issued his initial decision. ID at 3-8. Subsequent to the initial decision, however, the Federal Circuit held for the first time that, to support an adverse action under chapter 43, an agency "must justify institution of a PIP" by showing that the employee's performance was unacceptable before the PIP. *Santos*, 990 F.3d at 1360-61. Therefore, to defend an action under chapter 43, an agency must now also prove by substantial evidence that the appellant's performance during the appraisal period prior to the PIP was unacceptable in one or more critical elements. *See Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 15. The Federal Circuit's decision in *Santos* applies to all pending cases, including this one, regardless of when the events took place. *Id.*, ¶ 16. The parties here did not have an opportunity before the administrative judge to address the modified legal standard in light of *Santos*. We therefore remand this case for further adjudication of the appellant's removal under the standard set forth in *Santos*. *See Santos*, 990 F.3d at 1363-64 (remanding the appeal for further proceedings under the modified legal standard); *see also Lee*, 2022 MSPB 11, ¶ 16 (remanding the appellant's chapter 43 appeal because the parties were not informed of the modified standard set forth in *Santos*).

On remand, the administrative judge shall accept evidence and argument on whether the agency proved by substantial evidence that the appellant's pre-PIP performance was unacceptable. The administrative judge shall hold a

supplemental hearing if appropriate. The administrative judge shall then issue a new initial decision consistent with *Santos*. If the agency makes the additional showing required under *Santos* on remand, the administrative judge may incorporate his prior findings on other elements of the agency's case in the remand initial decision. However, regardless of whether the agency meets its burden, if the argument or evidence on remand regarding the appellant's pre-PIP performance affects the administrative judge's analysis of the appellant's affirmative defenses, he should address such argument or evidence in the remand initial decision. *See Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (explaining that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests).

## ORDER

For the reasons discussed above, we grant the appellant's petition for review, modify the initial decision to clarify the legal standard applicable to the appellant's claim of EEO retaliation, and remand this case to the regional office for further adjudication consistent with *Santos*.

FOR THE BOARD:

*Gina K. Grippando*

_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.